IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DYLAN E.**[1], <br><br>   Plaintiff, <br><br>  v. <br><br>**KILOLO KIJAKAZI,** Acting Commissioner of Social Security, <br><br>   Defendant. | Case No. 1:20-cv-1192-SI <br><br>**OPINION AND ORDER** |

Jeffrey H. Baird. DELLERT BAIRD LAW OFFICES, PLLC, 6525 California Ave SW, Suite 101, Seattle, WA 98136. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Diana Andsager, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

   Plaintiff Dylan E. seeks judicial review of the Commissioner of the Social Security

Administration (Commissioner) denying Plaintiff's application for Supplemental Security

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Income (SSI) under Title XVI of the Social Security Act (Act). After Plaintiff filed his opening brief, the Commissioner conceded error and moved for an order remanding for further administrative proceedings. Plaintiff replied, arguing that the Court should remand this case for a finding of disability and the payment of benefits. For the reasons stated below, the Court remands for a finding of disability and the payment of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

### A. Plaintiff's Application

Plaintiff filed for SSI on May 30, 2017, alleging disability beginning on May 30, 2017. AR 68. Plaintiff's date of birth is September 8, 1990 and he was 26 years old as of the alleged disability onset. AR 70. The agency denied his claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 83, 90, 98. Plaintiff appeared for a hearing before an ALJ in October 2019. AR 27. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 13-22. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 30, 2017. AR 15. At step two, the ALJ determined that Plaintiff had the severe impairment of schizoaffective disorder, bipolar type. AR 16. At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16. The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform "a full range of work at all exertional levels but with the following nonexertional limitations: he can have only occasional interactive contact with the public." AR 17. Based on these limitations, at step four, the ALJ found that Plaintiff could not perform any past relevant work. AR 20. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 21. The ALJ thus concluded that Plaintiff was not disabled. AR 22.

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) improperly rejecting the medical opinions of Drs. Susan Joshua and Michael O'Connell; and (2) improperly rejecting Plaintiff's subjective symptom testimony. The Commissioner concedes that the ALJ erred in rejecting the medical opinions of Drs. Joshua and O'Connell. ECF 15, at 1-2. The Court therefore considers whether the ALJ improperly rejected Plaintiff's symptom testimony and whether to remand the case for further proceedings or for payment of benefits.

**A. Plaintiff's Symptom Testimony**

The Commissioner does not expressly concede that the ALJ improperly rejected Plaintiff's symptom testimony. The Commissioner, however, did not defend the ALJ's reasons for discounting Plaintiff's testimony or respond to Plaintiff's arguments challenging these reasons. The Commissioner only noted that it "disputes" that the ALJ improperly discredited Plaintiff's symptom testimony. The Commissioner, however, offered no argument in support other than the general conclusory argument that the "ALJ reasonably relied on evidence that showed Plaintiff was not as limited as he claimed." *See* ECF 15, at 2. Accordingly, the Commissioner has waived any argument that the ALJ provided adequate reasons to discount Plaintiff's symptom testimony. *See, e.g.*, *Megan, S. v. Berryhill*, 2019 WL 1919169, at *5 (D. Or. Apr. 30, 2019) (finding that the Commissioner "has waived any argument that the ALJ provided a clear and convincing reason other than Plaintiff's purported improvement" by failing to respond to Plaintiff's arguments other than generally to assert "harmless error"); *Alesia v. Berryhill*, 2018 WL 3920534, at *7 (N.D. Ill. Aug. 16, 2018) (finding that the Commissioner's "conclusory assertion and overly broad evidentiary citation" is not a sufficient argument and thus waives any argument that the ALJ's conclusion was legally sufficient); *Kelly v. Colvin*, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015) (finding that the Commissioner's failure to defend

PAGE 6 – OPINION AND ORDER

the ALJ's assessment on certain grounds waived those issues). The Court therefore concludes that the ALJ erroneously discredited Plaintiff's symptom testimony.

## B. "Credit-as-True" Framework

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

PAGE 7 – OPINION AND ORDER

## C. Credit-as-True Analysis

### 1. Harmful Legal Error

The Commissioner concedes that the ALJ committed harmful legal error by rejecting the medical opinions of Drs. Joshua and O'Connell. ECF 15, at 1-2. The Court also concludes that the ALJ committed harmful legal error by improperly rejecting Plaintiff's symptom testimony. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). Plaintiff's testimony describes limitations that would be consequential to the ultimate disability determination.

### 2. Fully Developed Record and Utility of Further Proceedings

The Commissioner argues that Dr. Joshua's treatment notes create ambiguity as to Plaintiff's limitations. The Commissioner points to Dr. Joshua's notes stating that Plaintiff had "intact" memory, concentration, focus, insight, and judgment. The Commissioner does not, however, elaborate on why these treatment notes create ambiguity. To the contrary, the fact that Plaintiff demonstrated some "intact" mental abilities does not contradict or otherwise obscure the evidence in the record showing that Plaintiff's panic attacks, mania, and depression impair his ability to sustain full-time employment. The Commissioner makes no other argument with respect to whether there is a fully developed record, and the Court identifies no other basis for the utility of further proceedings.

### 3. Required Finding of Disability

Because the Court concludes that the record is free from conflicts and there is no useful purpose in further proceedings, the Court next considers whether the ALJ would be required to

find Plaintiff disabled if the improperly discredited evidence were credited as true. *Dominguez*, 808 F.3d at 407.

If the medical opinions of Drs. Joshua and O'Connell and Plaintiff's symptom testimony were credited as true, the ALJ would be required to find Plaintiff disabled. Plaintiff's symptom testimony demonstrates that Plaintiff's impairments prevent him from maintaining even part-time employment. Plaintiff testified that he experiences depressive episodes about 20 to 25 percent of the time and experiences manic episodes about 30 to 35 percent of the time. AR 45. Of particular importance is the fact that the stress of full-time work itself exacerbates Plaintiff's symptoms. Dr. O'Connell opined that "the stresses of full-time employment could significantly increase [Plaintiff's] risk for episodes of psychiatric decompensation" and "[w]hen such episodes occur, it is likely to demonstrate significant problems in his ability to function appropriately in work settings." AR 506. Further, Plaintiff explained that when he attempts to work full-time, his mood swings "become[] unbearable" and his periods of normalcy grow shorter and shorter until he feels like he is "going to lose [his] mind" and "spin out of control." AR 47. Plaintiff stated that his panic attacks, manic episodes, and depressive episodes "wear[] on [his] ability to work at all" to the point where he is "unable to work." AR 192. Plaintiff also testified that during his depressive episodes, he calls in sick from work more than half of the time. AR 44.

Plaintiff explained that his "trend" is to work for two to three months before he becomes "too stressed to handle it anymore." AR 209. Dr. Joshua confirms that stress, anxiety, and depression have thwarted Plaintiff's several attempts to maintain full-time employment. AR 47 (noting that Plaintiff's attempts to work have been "unsuccessful due to stress, anxiety, self-esteem issues, eventually to the degree that causes him to become quite depressed and non-functioning" and that Plaintiff's "mental and emotional stability inhibit him from" participating

PAGE 9 – OPINION AND ORDER

in the workforce). Plaintiff's work history also confirms this trend. Plaintiff testified that during his most recent job, as a tutor, he experienced "so many panic attacks from [his] depressive episodes" that he could not even work once a month. AR 33. Before that, Plaintiff worked from home about ten hours per week making phone calls to sell marijuana. AR 37. Plaintiff testified that during that time he was "barely able to keep it . . . under reigns at ten hours a week" and was "so unproductive and . . . missing so much work." AR 37. Plaintiff explained that he "would have more and more panic attacks the longer [he] worked at any facility" even if he was working from home. AR 39.

Considering the Vocational Expert's testimony that an individual would be unable to sustain full-time employment if he or she consistently missed two or more days of work per month, Plaintiff is disabled. *See* AR 55. Plaintiff's testimony demonstrates that he misses more than half of the work week when experiencing a depressive episode and that he experiences depressive episodes at least 20 percent of the time, without taking into consideration the fact that full-time work itself exacerbates Plaintiff's symptoms. Thus, a conservative calculation shows Plaintiff would miss at least 10 percent of workdays per month, which is two days per month. Further, Plaintiff's testimony and the medical opinions of Drs. Joshua and O'Connell demonstrate that full-time work exacerbates Plaintiff's symptoms, which causes him to miss even more days of work. Thus, crediting Plaintiff's testimony and Drs. Joshua and O'Connell's medical opinions as true, Plaintiff's impairments cause him to consistently miss two or more days per month, which renders him disabled under the Act.

### 4. Serious Doubts as to Plaintiff's Disability

The Commissioner argues that Plaintiff's treatment, mental exams, work history, social activities cast serious doubt as to Plaintiff's disability. "Serious doubt" may exist when "the government has pointed to evidence in the record that the ALJ overlooked and explained how

PAGE 10 – OPINION AND ORDER

that evidence casts into serious doubt the claimant's claim to be disabled" even if the ALJ did not consider that evidence at the hearing. *Dominguez*, 808 F.3d at 407 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)).

The Commissioner argues that Dr. Joshua's note that Plaintiff's schizoaffective disorder was "stable" on his medications casts doubt on Plaintiff's disability. *See* AR 492. The fact that Plaintiff's medications stabilized his schizoaffective disorder, however, does not speak to whether Plaintiff's panic attacks, mania, and depression were also stabilized. In that same treatment record, Dr. Joshua noted that Plaintiff had "not been able to maintain occupational function" and has had "numerous jobs and failed to maintain emotional stability each time." AR 492 (emphasis in original). Additionally, Dr. O'Connell opined that Plaintiff's mood swings had improved with medication, but that "[n]onetheless, he still experiences periods with significant depressive symptoms as well as periods with elevated energy levels, scattered thoughts, and diminished capacity for communication" and that when his mood is not in the normal range his "functional capacity appears significantly impaired." AR 506. Further, Plaintiff's function report indicates that his medications helped prevent him from hearing voices but did not fully regulate his panic attacks, mania, and depression. AR 194. In his function report, Plaintiff wrote that he needs no reminders to take his medications because he is "[t]oo scared to hear voices again" and so "takes [his medications] religiously." AR 194. Dr. Joshua's note that Plaintiff's medication stabilized Plaintiff's schizoaffective disorder therefore does not cast serious doubt on Plaintiff's disability resulting from his panic attacks, mania, and depression.

The Commissioner also argues that Plaintiff's work history and daily activities cast serious doubt on his disability. As explained above, Plaintiff's work history confirms that

PAGE 11 – OPINION AND ORDER

Plaintiff's impairments render him disabled. The Commissioner argues that Plaintiff's ability to go hiking, camping, visit friends, play videogames, sing karaoke, go to the gym, cook, clean, do yard work, drive, shop alone, and go outside for 30 to 60 minutes per day casts doubt on his disability, but the Commissioner offers no explanation in support. These daily activities do not cast serious doubt on the fact that Plaintiff's panic attacks, mania, and depression resulting from his impairments and exacerbated by full-time work prevents him from maintaining full-time employment. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[The Ninth Circuit" has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 18th day of January, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge